UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**LYNNE M. HYMAN,**

    Plaintiff,

v.                                        CASE NO.:_____

**VERIZON WIRELESS SERVICES,**     COMPLAINT FOR
**LLC; and, BUREAU OF COLLECTION**   UNLAWFUL COLLECTION
**RECOVERY, a Minnesota corporation,**   PRACTICES

                                                            **JURY TRIAL DEMANDED**

    Defendant.
_____/

    **COMES NOW** Plaintiff, Lynne M. Hyman, by and through the undersigned law firm and sues Defendants, Verizon Wireless, a Delaware Corporation and Bureau of Collection Recovery, a Minnesota corporation, and alleges as follows:

**PRELIMINARY STATEMENT**

    1.    Plaintiff brings this action pursuant to 15 U.S.C. § 1692 *et seq.*, the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. §1681 *et seq.*, the Fair Credit Reporting Act (the "<u>FCRA</u>"), Fla. Stat. § 559.55 *et seq.*, the Florida Consumer Collection Practices Act (the "<u>FCCPA</u>") and Florida common law. Fla. Stat. § 559.55 *et seq.*, the Florida Consumer Collection Practices Act (the "FCCPA").

**JURISDICTION AND VENUE**

    2.    This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d), 5 U.S.C. § 1681p, 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

3. Venue is proper in this District because the acts, transactions and occurrences giving rise to this cause of action occurred here, the Plaintiff resides here, and the Defendants transact business here.

## PARTIES

4. Plaintiff, Lynne M. Hyman ("Plaintiff" or "Hyman"), is a natural person who is a resident of the City of Tampa, County of Hillsborough, State of Florida, and is a "consumer" as that term is defined by Fla. Stat. § 559.55(2) and 15 U.S.C. § 1692a(3).

5. Defendant, Verizon Wireless Services, LLC, ("Verizon") is a Delaware corporation doing business in the City of Tampa, County of Hillsborough, State of Florida and is a "person" as that term is used in Fla. Stat. § 559.72.

6. All conduct alleged herein by representatives of Verizon was authorized, approved and/or ratified by one or more officers, directors, or managers of Verizon, and/or Verizon knew in advance that the representatives were likely to so conduct themselves and allowed to so act with conscious disregard of the rights and safety of others. The conduct alleged herein was despicable, fraudulent, oppressive, and done with malice.

7. At all times mentioned herein, the agent or employee of Verizon was acting within the course and scope of such agency or employment and was acting with the consent, permission and authorization of Verizon.

8. Defendant, Bureau of Collection Recovery, ("BCR" together with Verizon are "Defendants") is a Minnesota corporation doing business in the City of Tampa, County of Hillsborough, State of Florida and is a "person" as that term is used in Fla. Stat. § 559.72 and is "debt collector" as that term is defined by 15 U.S.C § 1692a(6) and Fla. Stat. § 559.55(6).

9. All conduct alleged herein by representatives of BCR was authorized, approved and/or ratified by one or more officers, directors, or managers of BCR, and/or BCR knew in advance that the representatives were likely to so conduct themselves and allowed to so act with conscious disregard of the rights and safety of others. The conduct alleged herein was despicable, fraudulent, oppressive, and done with malice.

10. At all times mentioned herein, the agent or employee of BCR was acting within the course and scope of such agency or employment and was acting with the consent, permission and authorization of BCR.

11. At all time mentioned herein, BCR was an agent of Verizon and was acting within the course and scope of such agency and was acting with the consent, permission and authorization of Verizon.

## FACTUAL ALLEGATIONS

12. Upon information a belief, in or about March 2002, Plaintiff entered into a contract with Verizon, for mobile cellular phone services, (the "Contract").[1]

13. Upon information and belief, Verizon identifies the Contract as account number 0023061168668400001 and was for a cellular phone with the number (352) 262-8786, (the "Account").

14. During the course of collection activity, Verizon has alleged that pursuant to the terms of the Contract, Plaintiff agreed to pay a "$175 EARLY TERMINATION FEE" if the Contract was terminated prior to the Contract End Date.

15. Upon information and belief, the "Contract End Date" was no later than March 2004.

---

[1] Plaintiff has repeatedly since 2005 attempted to obtain a full, executed copy of the contract from Verizon; however, Verizon has failed to provide the same.

3

16. Plaintiff terminated the Contract nearly a year after the "Contract End Date" on or about January 2005.

17. Upon information and belief, the Contract was a month to month contract when terminated and no Early Termination Fee was applicable.

18. In January, 2005, Plaintiff was contacted by Verizon and its debt collector agents, AFNI, Inc. and National Enterprise Systems, regarding approximately $191.00[2] alleged to be due and owing on the Account. (Copies of the correspondence from AFNI, Inc. and National Enterprise Systems is attached hereto as **Composite Exhibit "A"**).

19. The amount set forth in the previous paragraph was, according to Verizon and its agents, comprised of a $175.00 Early Termination Fee and $16.00 (or $16.63 according to National Enterprise Systems) for other charges.

20. On or about January 24, 2005 Plaintiff paid the $16.63 for other charges and disputed the $175.00 Early Termination. (Copies of the correspondence from Plaintiff to National Enterprise Systems is attached hereto as **Composite Exhibit "B"**).

21. At or about the time of the payment referenced in the previous paragraph, Plaintiff made numerous requests of Verizon for a copy of the Contract. Despite Plaintiff's repeated requests, Verizon has never provided Plaintiff with a copy of the Contract.

22. Plaintiff presumed this matter was resolved; however, thereafter, in or about June 2007, learned that Verizon was reporting the account to all of the major credit bureaus: Experian; Equifax; and, TransUnion.

23. Plaintiff had applied jointly with her husband for a loan in connection with the purchase of real property. The mortgage broker on this loan transaction advised Plaintiff that if

---

[2] Afni, Inc. and National Enterprise Systems alleged different amounts to be due and owing on the Account, the former sought $191.00 and the later sought $191.63.

4

the loan was submitted in her name the interest rates would be higher as a result of the adverse credit reporting by Verizon.

24. Plaintiff has no other adverse reporting other than by Verizon.

25. Despite both written and verbal notification of the existence of a dispute regarding the erroneous Early Termination Fee in early 2005; as late as January 2008, Verizon was still failing to report the Account as "disputed" when reporting to credit reporting services. (A copy of Plaintiff's Experian and Equifax credit reports dated January 18, 2008 are attached hereto as **Composite Exhibit "C"**).[3]

26. On or about January 4, 2008, Verizon, through its agent, BCR, resumed collection activity on the disputed Account, alleging that $206.50 is now due and owing on the Account, (the "Alleged Debt"). (Copies of the correspondence from BCR is attached hereto as **Exhibit "D"**).

27. The Alleged Debt is, according to Verizon and BCR, comprised of a $175.00 Early Termination Fee and $31.50 for "Collection Fees".

28. On or about January 14, 2008, Plaintiff notified Verizon and BCR of the dispute as outlined above regarding the Alleged Debt. (A copy of Plaintiff's correspondence to BCR is attached hereto as **Composite Exhibit "E"**).

29. Despite the dispute referenced in the previous paragraph, on or about March 20, 2008 at 7:30 p.m., E.D.T., BCR called Plaintiff attempting to collect the Alleged Debt. Plaintiff spoke with a BCR employee who identified herself as "Tennille".

30. Plaintiff again notified BCR through "Tennille" that the Alleged Debt was disputed.

---

[3] Portions of the credit reports have been redacted to exclude private personal information relating to Plaintiff or other accounts which are unrelated to the Account at issue in this suit.

31.     Again on or about April 3, 2008 at 1:40 p.m., E.D.T., BCR called Plaintiff attempting to collect the Alleged Debt.  Plaintiff spoke with a BCR employee who identified himself as "Tony".

32.     Plaintiff inquired whether BCR had received the January 14, 2008 letter disputing the Alleged Debt.

33.     Tony refused to state whether BCR had received the January 14, 2008 letter disputing the Alleged Debt; however, Tony stated that unless the letter affirmatively showed proof that the Account was satisfied or not owed that BCR would not record the same in their system and their debt collection efforts on the Alleged Debt would continue.

34.     At this point in the conversation Tony became belligerent wanting only to know when the Alleged Debt would be paid, refusing to listen to the basis for Plaintiff's dispute.

35.     Plaintiff asked "Tony" for his last name.  Tony refused and eventually hung up.

36.     Again on or about April 24, 2008 BCR contacted Plaintiff.  A woman identifying herself as "Sandy" left a message requesting Plaintiff to call her back at (888) 276-8576.

## COUNT I

## VIOLATION OF THE FDCPA, 15 U.S.C. § 1692 *et seq.*

37.     This is an action against BCR for violations of the FDCPA 15 U.S.C. § 1692 *et seq*.

38.     Hyman realleges and incorporates paragraphs one (1) through thirty-six (36) as if fully set forth herein.

39.     The Alleged Debt is a "debt" as defined by 15 U.S.C. § 1692a(5) in that some or all of the debt is an obligation alleged incurred by Hyman arising out of a transaction in which

6

the money, property, insurance, or services which are subject of the transaction were primarily used for personal, family, or household purposes.

43. BCR, in the conduct of its business, uses one or more instrumentalities of interstate commerce or the mails.

41. The principal business of BCR is the collection of debts and BCR regularly collects or attempts to collect, directly or indirectly, debts owed or due another.

42. 15 U.S.C. § 1692e provides, in pertinent part, as follows:

A debt collector may not use and false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(2) The false representation of –

(A) the character, amount, or legal status of any debt

43. BCR's efforts to collect the Alleged Debt which consists entirely of a $175.00 Early Termination Fee and BCR's "Collection Fees" of $31.50 neither of which Hyman is contractually obligated to pay violates 15 U.S.C. § 1692e(2)(A).

44. 15 U.S.C. § 1692e provides, in pertinent part, as follows:

A debt collector may not use and false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

45. BCR's efforts to collect the Alleged Debt which consists entirely of a $175.00 Early Termination Fee and BCR's "Collection Fees" of $31.50 neither of which Hyman is contractually obligated to pay violates 15 U.S.C. § 1692e(10).

46. 15 U.S.C. § 1692f provides, in pertinent part, as follows:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

47. BCR's efforts to collect the Alleged Debt which consists entirely of a $175.00 Early Termination Fee and BCR's "Collection Fees" of $31.50 neither of which Hyman is contractually obligated to pay are both unfair and unconscionable and violates 15 U.S.C. § 1692f.

48. 15 U.S.C. § 1692f provides, in pertinent part, as follows:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

49. BCR's efforts to collect the Alleged Debt which consists entirely of a $175.00 Early Termination Fee and BCR's "Collection Fees" of $31.50 neither of which Hyman is contractually obligated to pay violates 15 U.S.C. § 1692f(1).

50. 15 U.S.C. § 1692d provides, in pertinent part, as follows:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

51. BCR knew or should have known that the natural consequence of its' actions in continuing to attempt to collect the Alleged Debt which consists entirely of a $175.00 Early Termination Fee and BCR's "Collection Fees" of $31.50 neither of which Hyman is contractually obligated to pay would and did, harass, oppress and abuse Lange.

52. 15 U.S.C. § 1692d(5) specifically enumerates that "Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number" is a violation of this section.

53. There can be little doubt that the repeated telephone calls by BCR months after they knew Plaintiff's position with respect to the Early Termination Fee, were intended to annoy, abuse and harass Plaintiff and did in fact do so.

54. The comments of BCR's employee Tony as set forth in ¶33 above is particularly illustrative of BCR willful and malicious conduct in this regard.

55. Accordingly, BCR's actions violated 15 U.S.C. § 1692d.

56. 15 U.S.C. § 1692c provides, in pertinent part as follows:

(c) Ceasing communication

If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except--

(1) to advise the consumer that the debt collector's further efforts are being terminated;

(2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or

(3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

If such notice from the consumer is made by mail, notification shall be complete upon receipt.

57. BCR's continued collection efforts as detailed in ¶¶ 29, 31 and 36 after receipt of Plaintiff's January 14, 2008 letter violate 15 U.S.C. § 1692c(c).

58. 15 U.S.C. § 1692c provides, in pertinent part as follows:

(b) Disputed debts

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

59. Plaintiff notified BCR in writing, within thirty (30) from the receipt of the validation notice provided by BCR that: "The **entire** amount that is indicated as due on the attached notice, $206.50, is in dispute." (*See*, ¶¶ 26 and 28 and Exhibit D and E).

60. Despite the mandate set forth in 15 U.S.C. § 1692c(b), BCR has never provided written verification of the Alleged Debt to Plaintiff and has not ceased collection of the Alleged Debt.

61. Accordingly, BCR's actions violated 15 U.S.C. § 1692c(b).

62. As a result of BCR's multiple violations of the FDCPA, Hyman has been damaged, and is entitled to: (a) actual damages pursuant to 15 U.S.C. § 1692k(a)(1); (b) statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, (c) reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

63. All conditions precedent to the maintenance of this action have occurred, have been satisfied, or have been waived.

## COUNT II

## VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681s-2(b)

64. Plaintiff realleges and incorporates paragraphs one (1) through thirty-six (36) as if fully set forth herein.

65. This is an action against Verizon for violations of the Fair Credit Reporting Act, FCRA, 15 U.S.C. § 1681 *et seq*.

66. Upon information and belief, Verizon is a subscriber of the national credit reporting agencies, TransUnion, Experian and Equifax.

67. Verizon prepared, complied, issued, assembled, and communicated inaccurate, erroneous, blatantly false information regarding Plaintiff, as defined in the FCRA.

68. Verizon communicated false consumer information regarding Plaintiff to third parties and verified it as true and accurate such that Verizon communicated to Plaintiff that this inaccurate information would remain on her credit report.

69. Verizon willfully and maliciously violated 15 U.S.C. §1681s-2(b) by failing to conduct a reasonable investigation with respect to the Alleged Debt, failing to review all relevant information available to Defendants.

70. Verizon's conduct, action and inaction were willful and malicious, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n of FCRA.

71. Plaintiff is entitled to recover costs and attorney's fees from in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and 1681o of FCRA.

72. All conditions precedent to the maintenance of this action have occurred, have been satisfied, or have been waived.

## COUNT III

## VIOLATION OF FLORIDA CONSUMER COLLECTION PRACTICES ACT, Fla. Stat. § 559.55 *et seq.*

73. This is an action against BCR and Verizon for violations of the Fla. Stat. § 559.55 *et seq*.

74. Hyman realleges and incorporates paragraphs one (1) through thirty-six (36) as if fully set forth herein.

75. The Alleged is a "consumer debt" as defined by Fla. Stat. § 559.55(1) in that some or all of the debt is an obligation alleged incurred by Hyman incident to the purchase of property or services which were primarily used for personal, family, or household purposes.

76. BCR and Verizon are engaged in the business of soliciting consumer debts for collection or of collecting consumer debts and are therefore subject to Fla. Stat. § 559.55 *et seq.*

77. Fla. Stat. § 559.72 provides, in pertinent part, as follows:

In collecting consumer debts, no person shall:

(9) Claim, attempt, or threaten to enforce a debt when such person knows that debt is not legitimate or assert the existence of some other legal right when such person knows the right does not exist

78. BCR's efforts to collect the Alleged Debt which consists entirely of a $175.00 Early Termination Fee and BCR's "Collection Fees" of $31.50 neither of which Hyman is contractually obligated to pay violates Fla. Stat. § 559.72(9).

79. Verizon's continued efforts to collect the Alleged Debt, through BCR, which consists entirely of a $175.00 Early Termination Fee and BCR's "Collection Fees" of $31.50 neither of which Hyman is contractually obligated to pay violates Fla. Stat. § 559.72(9).

80. BCR and Verizon knew or should have known the foregoing. Accordingly, BCR and Verizon violated Fla. Stat. § 559.72(9).

81. Fla. Stat. § 559.72 provides, in pertinent part, as follows:

In collecting consumer debts, no person shall:

(6) Disclose information concerning the existence of a debt known to be reasonable disputed by the debtor without disclosing that fact. If a disclosure is made prior to such reasonable dispute having been asserted and written notice is received from the debtor that any part of the debt is disputed and if such dispute is reasonable, the person who made the original disclosure shall reveal upon the request of the debtor within 30 days the details of the dispute to each person to whom disclosure of the debt without notice of the dispute was made within the preceding 90 days.

82. Verizon received notice from Plaintiff in or about January or February 2005 that the Alleged Debt was disputed. Despite both written and verbal notification of the existence of a dispute regarding the erroneous Early Termination Fee in early 2005; as late as January 2008,

Verizon was still failing to report the Account as "disputed" when reporting to Experian, Equifax and TransUnion.

83.     Accordingly, Verizon's actions violated Fla. Stat. § 559.72(6).

84.     Due to the violations of Florida law by BCR and Verizon as set forth above, Hyman has suffered damages including without limitation through mental anguish, despair, frustration, embarrassment, nervousness, anger, and loss of the capacity for the enjoyment of life and is entitled to an award of actual and statutory damages under Fla. Stat. § 559.77.

85.     In light of the malicious nature of BCR's and Verizon's actions, Hyman is also entitled to an award of punitive damages under Fla. Stat. § 559.77.

86.     All conditions precedent to the maintenance of this action, have occurred, have been satisfied, or have been waived.

**WHEREFORE**, Hyman respectfully requests this Court to enter a judgment against BCR and Verizon in her favor and finding that BCR's and Verizon's actions, consistent with the allegations above, have: (1) violated the FDCPA (as to BCR only); (2) violated FCCPA; (3) violated the FCRA (as to Verizon only); (4) awarding Hyman her actual damages, statutory damages, punitive damages, and attorneys' fees and costs; and, (5) granting any and all such further relief as is deemed necessary or appropriate.

## **DEMAND FOR JURY TRIAL**

Hyman is entitled to and hereby respectfully demands a trial by jury on all Counts so triable pursuant to U.S. Const. amend. VII and Fla. R. Civ. P. 38.

Dated:  May 27, 2008.

                                                Respectfully Submitted,

                                                 /s/ Damon M. Ellis_____
                                                DAMON M. ELLIS, ESQ.
                                                Florida Bar No. 0111864
                                                e-mail: dellis@saxongilmore.com
                                                THOMAS A. LASH, ESQ.
                                                Florida Bar No. 0849944
                                                e-mail: tlash@saxongilmore.com
                                                SAXON, GILMORE, CARRAWAY,
                                                GIBBONS, WILCOX & LASH, P.A.
                                                Fifth Third Center
                                                201 E. Kennedy Blvd., Suite 600
                                                Tampa, Florida 33602
                                                Phone: (813) 314-4500
                                                Facsimile: (813) 314-4555
                                                Counsel for Plaintiff

e:\hyman lynne\pldg\complaint(rev-52308)sc.doc
5/27/08